UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| LOI TAN NGUYEN, | ) ) ) | |
| Plaintiff | ) ) | |
| v. | ) ) | Civil Action No. 04-CV-11781-DPW |
| NMT MEDICAL, INC., | ) ) ) | |
| Defendant. | ) ) | |

**MEMORANDUM IN SUPPORT OF NMT MEDICAL, INC.'S
MOTION FOR SUMMARY JUDGMENT**

**Introduction**

On June 25, 2003, NMT Medical, Inc. ("NMT" or the "Company") terminated the at-will employment of plaintiff Loi Tan Nguyen after investigating an incident involving Mr. Nguyen and a co-worker and determining that Mr. Nguyen had behaved inappropriately, yelling at and threatening that co-worker. Mr. Nguyen alleges that NMT discriminated against him based on his Asian race and Vietnamese national origin in terminating his employment, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"). (Complaint ¶¶ 3, 5).[1] In addition, Mr. Nguyen alleges that NMT instigated a co-worker to harass him and that NMT invaded his privacy. (Id. at ¶¶ 3-4).

Summary judgment should be entered for NMT because the undisputed material facts show that: (i) Mr. Nguyen admittedly has no evidence of discrimination or harassment based on his race or national origin; (ii) NMT terminated Mr. Nguyen's employment for the legitimate, non-discriminatory business reason that it had determined that Mr. Nguyen had engaged in

---

[1] All citations are to deposition testimony, documents produced during discovery, affidavits or papers previously filed with the Court, and are attached to the separately filed Affidavit of Julie Murphy Clinton, Esq. Citations to the exhibits attached to that Affidavit are abbreviated as "Ex." All citations to NMT's Local Rule 56.1 Statement of Undisputed Material Facts, filed together with this Memorandum, are abbreviated as "SOF."

1

inappropriate behavior by yelling at and threatening a co-worker; (iii) Mr. Nguyen cannot show that NMT's legitimate, non-discriminatory business reason for terminating his employment is a pretext for discrimination; and (iv) Mr. Nguyen admittedly has no evidence that NMT invaded his privacy.  Mr. Nguyen's claims of discrimination and harassment under Title VII, as well as his claim for invasion of privacy, are based on his subjective feelings and beliefs only, not conduct or statements that reasonably could be regarded as discriminatory or unlawful.[2]  Therefore, NMT's Motion for Summary Judgment should be granted.

**I.    SUMMARY OF UNDISPUTED MATERIAL FACTS**[3]

    A.    <u>The Company and Mr. Nguyen's Employment.</u>

NMT, based in Boston, Massachusetts, designs, develops and markets proprietary implant technologies that allow cardiologists to treat cardiac sources of stroke.  (SOF at ¶ 1). The Company is committed to equal employment opportunity and employs a diverse workforce of approximately 99 employees, of which 66% are Caucasian, 32% are Asian (primarily of Cambodian and Vietnamese descent) and the remainder are Hispanic and African American. (<u>Id.</u>).

Mr. Nguyen, who is Asian and of Vietnamese descent, began his employment at NMT on May 20, 2002 as a Senior Technician in the Research and Development Department.  (<u>Id.</u> at ¶¶ 2-3).  In this position, Mr. Nguyen was responsible for performing laboratory-based support for

---

[2] While Mr. Nguyen discusses a number of extraneous allegations in his Complaint, such as an attempt by a "group of professionals" to force him into using his "super dexterity" to perform delicate assembly work (Complaint at ¶ 5), the undisputed evidence regarding the material facts related to his claims shows that no reasonable fact finder could find in his favor.

[3] The accompanying Statement of Undisputed Material Facts In Support Of NMT Medical, Inc.'s Motion for Summary Judgment sets forth in detail all of the undisputed facts relevant to this action.  NMT includes this brief summary for the Court's convenience.  For the purposes of this motion, NMT treats the factual information contained in the Statement of Undisputed Material Facts and in this Memorandum as undisputed, and presents those facts, as it must at summary judgment, in the light most favorable to Mr. Nguyen.

Research and Development projects. (Id. at ¶ 2). He was supervised by Senior Engineer Lee Core and worked in a department with fourteen employees, of which three were Asian. (Id.).

   B. <u>Mr. Nguyen's Complaints Regarding A Co-Worker's Use of Profanity.</u>

After working at NMT for approximately two months, Mr. Nguyen sent an email to Human Resources Manager Cara Hard complaining that Kellywan Kan, also a Senior Technician, was swearing in his cubicle. (Id. at ¶ 5). Ms. Hard immediately met with Mr. Nguyen, who indicated that he was not sure whether Mr. Kan was directing the profanity at him. (Id.). Ms. Hard asked Mr. Kan's supervisor, Sean Forde, to meet with Mr. Kan and discuss Mr. Nguyen's concerns. (Id.). On or about August 1, 2002, Mr. Forde met with Mr. Kan regarding Mr. Nguyen's complaint to Ms. Hard. (Id. at ¶ 6). Mr. Kan, who is also Asian but of Cambodian descent, admitted that he occasionally swore in his cubicle, but stated that his words were in no way directed at Mr. Nguyen. (Id.). Mr. Forde instructed Mr. Kan to cease using profanity in the workplace. (Id.).

In his Complaint, Mr. Nguyen alleges that he and Mr. Kan were initially friendly but that their relationship gradually changed. (Id. at ¶ 4). Mr. Nguyen further alleges that he occasionally began to hear Mr. Kan use profanity in his cubicle by himself and that, based on Mr. Kan's voice and tone, Mr. Nguyen believed Mr. Kan was just speaking to himself. (Id.). However, Mr. Nguyen states that, about a month later, Mr. Kan stared away from him to avoid Mr. Nguyen's greetings when they passed each other and did not respond when Mr. Nguyen would say "hi" to him. (Id.). As a result, Mr. Nguyen states that their friendly relationship ended. (Id.). Mr. Nguyen further alleges that, as time went on, Mr. Kan's use of obscenities became more aggressive and that he believes Mr. Kan was directing the obscenities at him. (Id.). However, Mr. Nguyen admits that Mr. Kan only swore in his cubicle and that the only reason Mr. Nguyen believed Mr. Kan was directing profanity at him was because of Mr. Kan's "weird

3

personality" and because Mr. Nguyen did not believe there was any other reason for Mr. Kan to use profanity. (Id.). Further, Mr. Nguyen admits that Mr. Kan never said anything regarding Mr. Nguyen's race or national origin. (Id. at ¶ 18).

On May 28, 2003, almost one year after his initial complaint, Mr. Nguyen again spoke to Ms. Hard about Mr. Kan. (Id. at ¶ 9). Mr. Nguyen objected to Mr. Kan's continued use of obscenities in his cubicle (although he acknowledged that Mr. Kan never directed any profanity at him) and stated that Mr. Kan made him feel uncomfortable. (Id.). Ms. Hard asked Mr. Nguyen to explain specifically what Mr. Kan was doing to make him uncomfortable, but Mr. Nguyen abruptly left Ms. Hard's office. (Id.).[4]

The Company took Mr. Nguyen's concern seriously and took steps to investigate his complaint regarding Mr. Kan's use of profanity. (Id. at ¶ 10). Ms. Hard asked Mr. Core to meet with Mr. Nguyen to ascertain why Mr. Nguyen felt uncomfortable around Mr. Kan. (Id.). Mr. Core reported back to Ms. Hard that he had met with Mr. Nguyen on several occasions but Mr. Nguyen stated only that Mr. Kan engaged in "abnormal" conversation, namely by saying "shhh" as Mr. Nguyen walked by his workspace and making sounds and gestures reflecting his frustration. (Id.). Ms. Hard also asked Mr. Forde to meet with Mr. Kan to discuss Mr. Nguyen's complaint. (Id. at ¶ 11). During this meeting, Mr. Kan admitted to occasionally using obscenities in his cubicle and indicated that he would stop swearing in his cubicle. (Id.). During the investigation of Mr. Nguyen's complaint, Ms. Hard also interviewed Blong Xiong, a Senior Technician who is Asian and of Laotian descent, who stated that he did not hear Mr. Kan make

---

[4] Mr. Nguyen further alleges that, on an occasion prior to his May 28, 2003 complaint, when he and Mr. Kan were working in the laboratory, Mr. Kan was walking back and forth with a caliper in his hand gesturing back and forth and Mr. Nguyen believed Mr. Kan was trying to intimidate him based on the way Mr. Kan walked and held the caliper. (Id. at ¶ 8). However, Mr. Nguyen admits that Mr. Kan did not say anything to him while walking back and forth with the caliper. (Id.). In addition, Mr. Nguyen admits that he never reported this incident to anyone at NMT. (Id.).

noises or curse at Mr. Nguyen, nor harass Mr. Nguyen in any way. (Id. at ¶ 12). Further, no one else at NMT ever reported hearing, seeing or perceiving Mr. Kan to be directing obscenities at Mr. Nguyen. (Id.). Overall, the Company's investigation did not reveal any information indicating Mr. Nguyen's complaint had any merit. (Id.).[5] However, the Company still wanted Mr. Nguyen to feel comfortable in his workplace and, therefore, drafted a memorandum of understanding that Mr. Nguyen and Mr. Kan signed on June 5, 2003. (Id.). In this memorandum, NMT agreed to move Mr. Nguyen's workspace so that he would not be sitting in the cubicle next to Mr. Kan and Mr. Nguyen agreed to notify his supervisor if Mr. Kan conducted himself in a way that made Mr. Nguyen feel uncomfortable. (Id.).

    C.    <u>Mr. Nguyen's Incident With A Co-Worker And NMT's Resulting Investigation.</u>

The following month, on June 23, 2003, Mr. Kan was joking in his cubicle with a co-worker, Andrzej Chanduszko when an incident involving Mr. Kan and Mr. Nguyen occurred, as described below. (Id. at ¶ 13). After the incident between Mr. Nguyen and Mr. Kan, Ms. Hard and Mr. Core tried to speak to Mr. Nguyen, but Mr. Nguyen refused to discuss the matter, except to deny requesting that Mr. Kan settle the dispute with him physically. (Id.). Mr. Nguyen then went to call the police to lodge a complaint against Mr. Kan. (Id.). Shortly thereafter, the Boston Police Department arrived at NMT and interviewed Mr. Nguyen and Ms. Hard. (Id.). When Mr. Nguyen was unable to identify any action taken against him by Mr. Kan, the police stated that they could do nothing but file a report of his complaints. (Id.). Ms. Hard told Mr. Nguyen that he should go home and should not report to work until after the Company investigated what had happened. (Id.).

---

[5] Mr. Nguyen alleges that NMT responded to his complaints regarding Mr. Kan by saying that Mr. Kan has a habit of using profanity and there is nothing the Company can do to stop him. (Id.). Although the Company disputes this allegation and denies that it ever made such statements, this is not a material fact for purposes of NMT's Motion. (Id.).

Over the several days following June 23, 2003, Ms. Hard completed a thorough investigation of the incident, interviewing the witnesses to the event. (Id. at ¶ 14). As part of her investigation, on June 23, 2003, Ms. Hard obtained a written statement regarding the incident from Mr. Forde, in which he stated that Mr. Xiong had alerted him and Mr. Core to the incident. (Id.). Mr. Forde reported that when he entered the work area, Mr. Nguyen was speaking in an angry, raised voice, gesturing past Mr. Chanduszko, directing aggression toward Mr. Kan and telling Mr. Kan that he wanted him to go outside. (Id.). Mr. Forde reported that Mr. Kan was trying to explain to Mr. Nguyen that he was not talking about him. (Id.). Mr. Forde also reported that he asked Mr. Kan to return to his office area, which Mr. Kan did, and he then asked Mr. Nguyen to return to his work area, but Mr. Nguyen continued behaving aggressively, stating "Let's go outside, I want to go outside." (Id.). Mr. Forde described that when he again asked Mr. Nguyen to return to his work area and stop his aggression, Mr. Nguyen began to argue and said that he did not have to stop talking and could say whatever he wanted to say. (Id.). Mr. Forde stated that he repeated his request for Mr. Nguyen to return to his work area two additional times and that Mr. Nguyen remained defiant until Mr. Core took Mr. Nguyen to a private area. (Id.).

As part of the investigation, Ms. Hard also spoke with Mr. Chanduszko, Mr. Core, Mr. Kan, Mr. Xiong, John Wright (Director of Research and Development) and Carol Ryan (Vice President of Research and Development). (Id. at ¶ 15). Mr. Chanduszko informed Ms. Hard that he and Mr. Kan had been joking with each other when Mr. Nguyen abruptly approached and yelled that Mr. Kan should stop making fun of him. (Id.). Mr. Chanduszko also reported that Mr. Nguyen asked Mr. Kan if he wanted to "take this outside" and repeatedly asked Mr. Kan if he wanted to settle the issue outside. (Id.). Mr. Core reported that, when Mr. Xiong brought him

6

to Mr. Nguyen and Mr. Kan, Mr. Nguyen was yelling and aggressively gesturing to Mr. Kan, saying "Let's go outside. You want to go outside?" (Id.). He confirmed that, when Mr. Forde asked Mr. Nguyen and Mr. Kan to return to their work areas, Mr. Nguyen did not comply and instead yelled at Mr. Kan, implying that he wanted to fight outside. (Id.). Mr. Core also reported that he then escorted Mr. Nguyen away from Mr. Kan but that Mr. Nguyen remained defiant and tried to break away. (Id.). Mr. Kan reported to Ms. Hard that Mr. Nguyen had said something to him about going outside and indicated that he was afraid of Mr. Nguyen. (Id.). Mr. Xiong recounted to Ms. Hard that he saw Mr. Nguyen run up to Mr. Kan and heard him ask Mr. Kan why he was laughing at Mr. Nguyen. (Id.). Further, Mr. Xiong reported that Mr. Chanduszko tried to explain that he and Mr. Kan were not talking about Mr. Nguyen and stood between Mr. Nguyen and Mr. Kan, attempting to direct Mr. Nguyen back to his work area. (Id.). Mr. Xiong stated that he then left to get Mr. Core and Mr. Forde and that, when he returned, Mr. Nguyen was walking back and forth and loudly repeating "Let's go outside. You want to go outside?" to Mr. Kan. (Id.). Mr. Xiong reported that Mr. Core then took Mr. Nguyen out of the area. (Id.). Mr. Wright and Ms. Ryan both reported hearing Mr. Nguyen yell at and threaten Mr. Kan. (Id.). Ms. Hard found the witnesses to the event to be credible and believed that Mr. Nguyen had behaved inappropriately, yelling at and threatening Mr. Kan. (Id. at ¶ 16).

     In light of the investigation results, the Company found the seven witnesses to the event to be credible, despite Mr. Nguyen's statement that he did not say anything to Mr. Kan about settling the dispute physically. (Id.). As a result, the Company believed that Mr. Nguyen had behaved inappropriately, yelling at and threatening Mr. Kan, and concluded that he posed a safety risk to Mr. Kan and its other employees. (Id. at ¶¶ 16-17). Therefore, on June 26, 2003,

7

the Company informed Mr. Nguyen that it had decided to terminate his employment due to his threats against a co-worker. (Id.).

        D.      <u>Facts Related to Mr. Nguyen's Claim of Invasion of Privacy.</u>

With respect to Mr. Nguyen's claim for invasion of privacy, although Mr. Nguyen states in his Complaint that he is "certain that [his] privacy has been invaded," he admits in his deposition that he has no evidence that NMT invaded his privacy. (Id. at ¶ 19). Further, at no time during Mr. Nguyen's employment did he ever complain to NMT about an alleged invasion of privacy. (Id.). In addition, at no time during Mr. Nguyen's employment did NMT invade his privacy or obtain details regarding his school record, medical record or daily activities, except to the extent disclosed by Mr. Nguyen. (Id.).

**II.**    **LEGAL ARGUMENT**

        A.      <u>Summary Judgment Standard.</u>

A court must grant summary judgment where the moving party shows that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); <u>Michelson v. Digital Fin. Servs.</u>, 167 F.3d 715, 720 (1st Cir. 1999). A factual dispute, which is neither "genuine" nor "material," will not prevent entry of summary judgment. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-48 (1986). For a factual dispute to be "genuine," the Court must conclude that the evidence is such that a reasonable jury could return a verdict for the plaintiff. Id. at 248. A factual dispute is "material" if it has the potential to affect the outcome of the suit under applicable law. Id. Conclusions, allegations and beliefs unsupported and unsubstantiated by admissible evidence do not establish genuine issues of material fact and cannot defeat summary judgment. See Fed. R. Civ. P. 56(e); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-24 (1986); <u>Medina-Munoz v. R.J. Reynolds Tobacco Co.</u>, 896 F.2d 5, 8 (1st Cir. 1990). Therefore, Mr. Nguyen

cannot rest on his pleadings and unsupported assertions that genuine issues of material fact exist to defeat NMT's motion for summary judgment; he can only defeat summary judgment by presenting admissible evidence as to each of the elements of his claims. See Celotex, 477 U.S. at 322–24.

      B.      Mr. Nguyen's Claim of Harassment Cannot Be Sustained As A Matter Of Law.

Mr. Nguyen alleges that his co-worker, Mr. Kan, harassed him by using profanity in his own cubicle and waving a caliper at him, and that NMT "instigated" Mr. Kan's actions. (SOF at ¶¶ 4, 8).[6] To establish a claim of harassment based on a hostile work environment, an employee must show (1) that he is a member of a protected class; (2) that he was subjected to unwelcome harassment; (3) that the harassment was based upon the employee's membership in a protected class; (4) that the harassment was sufficiently severe or pervasive so as to alter the conditions of his employment and create an abusive work environment; (5) that the objectionable conduct was both objectively and subjectively offensive such that a reasonable person would find it objectionable and the employee did perceive it to be hostile or abusive; and (6) that there is some basis for employer liability. Douglas v. J.C. Penney Co., Inc., 422 F.Supp.2d 260, 280 (D. Mass. 2006).

Even if Mr. Nguyen's allegations regarding Mr. Kan's use of obscenities and the caliper incident were true, Mr. Nguyen's claim of harassment based on his race and/or national origin must fail because he cannot satisfy several elements necessary to establish a claim for harassment. First, Mr. Nguyen cannot establish that Mr. Kan's use of obscenities or the caliper incident were based on his race or national origin, as he admits that he has no evidence that Mr. Kan's or NMT's actions were in any way related to his race or national origin and that neither Mr. Kan nor NMT ever made any comments relating to his race or national origin. (SOF at ¶ 18).

---

[6] A caliper is a small measuring tool used regularly by engineers at the Company. (SOF at ¶ 8).

9

Second, even if Mr. Nguyen's allegations were true, the alleged harassment consisting merely of a co-worker's use of obscenities in his own cubicle unrelated to race or national origin and waving of a caliper was not sufficiently severe or pervasive so as to alter the conditions of his employment and create an abusive work environment, nor was it objectively offensive such that a reasonable person would find it objectionable. See Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998) (stating judicial standards for harassment must filter out complaints attacking "the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing") (internal citation omitted); Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 81 (1998) (noting requirement that conduct be sufficiently severe or pervasive enough to create an objectively hostile or abusive work environment prevents Title VII from expanding into a "general civility code"); Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993) (noting that the "mere utterance of an . . . epithet which engenders offensive feelings in an employee" does not affect the conditions of an employee's employment such that Title VII is implicated) (internal citation omitted); Conto v. Concord Hosp., Inc., 265 F.3d 79, 82-83 (1st Cir. 2001) (finding exposure to sexually-charged profanities and obscene gestures, as well as repeated personal questions did not constitute actionable sexual harassment). Here, the alleged profanity consisted mostly of the words "shit . . . man," a far cry from the severe and pervasive conduct required to establish a hostile environment.

Finally, Mr. Nguyen's claim of harassment must fail because he cannot establish a basis for employer liability. In order to establish a basis for employer liability for the conduct of a non-supervisory employee, Mr. Nguyen must show that NMT knew or should have known of the harassment and failed to implement prompt and appropriate action. See Crowley v. L.L. Bean, Inc., 303 F.3d 387, 401 (1st Cir. 2002); Rose v. Baystate Med. Ctr., Inc., 985 F.Supp. 211, 218

(D. Mass. 1997). Here, with respect to the alleged caliper incident, Mr. Nguyen admits that he never reported this incident to anyone at NMT and, therefore, cannot show that NMT knew or should have known of the incident and failed to take proper remedial action. See Rose, 985 F.Supp. at 218 (finding plaintiff could not survive summary judgment because she could not show employer knew or should have known of the harassment that she admitted she never reported). Further, although Mr. Nguyen alleges that NMT "instigated" Mr. Kan's behavior, he has admitted that he has no evidence that NMT did so. (SOF ¶ 18). In addition, as the undisputed facts show, NMT promptly investigated both of Mr. Nguyen's complaints regarding Mr. Kan's swearing and appropriately concluded based on its investigation that no harassment was taking place. (SOF ¶¶ 5-7, 10-12). Moreover, despite its conclusion that no harassment was taking place, NMT wanted Mr. Nguyen to feel comfortable at work and, therefore, had Mr. Nguyen and Mr. Kan sign a memorandum in which, among other things, NMT agreed to move Mr. Nguyen's workspace so he would not be sitting in the cubicle next to Mr. Kan, and Mr. Nguyen agreed to notify his supervisor if Mr. Kan conducted himself in a way that made him feel uncomfortable. (SOF ¶ 12). Accordingly, Mr. Nguyen's claim of harassment must be dismissed.[7]

---

[7] Even if, as Mr. Nguyen alleges but the Company denies, NMT had told Mr. Nguyen that Mr. Kan had a habit of swearing and that it could not do anything to stop him, the Company's resolution of the matter following its investigation would have been sufficient for a finding of summary judgment as a matter of law. See Harvill v. Westward Communications, LLC, 433 F.3d 428, 439 (5th Cir. 2005) (finding employer took prompt remedial action where it separated employee from alleged harasser upon learning of employee's complaint of harassment); Newell v. Celadon Sec. Servs., Inc., 417 F.Supp.2d 85, 97 (D. Mass. 2006) (stating employer's response "must be reasonably calculated to prevent further harassment under the particular facts and circumstances of the case at the time the allegations are made") (internal citation omitted).

11

    C.    <u>Mr. Nguyen's Claim of Discrimination Based On Race And/Or National Origin Must Fail As A Matter of Law.</u>

        1.    <u>The Legal Standard For The Burden Shifting Analysis.</u>

In this case, there is no direct evidence of discrimination. Therefore, Mr. Nguyen's claim of race and/or national origin discrimination under Title VII is evaluated under the three-stage order of proof of <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973). <u>Quinones v. Buick</u>, 436 F.3d 284, 289 (1st Cir. 2006); <u>Benoit v. Technical Mfg. Corp.</u>, 331 F.3d 166, 173 (1st Cir. 2003); <u>Mulero-Rodriguez v. Ponte, Inc.</u>, 98 F.3d 670, 673 (1st Cir. 1996). Under that framework, a plaintiff bears the burden of proving by a preponderance of the evidence a *prima facie* case of discrimination, thus raising a presumption of discrimination. <u>Quinones</u>, 436 F.3d at 289; <u>Benoit</u>, 331 F.3d at 173. The defendant must then present a legitimate, non-discriminatory reason for its employment decision. <u>Quinones</u>, 436 F.3d at 289; <u>Benoit</u>, 331 F.3d at 174. The burden then shifts back to the plaintiff to demonstrate that the employer's legitimate, non-discriminatory reason is a pretext and the real reason for its action is discrimination. <u>Quinones</u>, 436 F.3d at 289; <u>Benoit</u>, 331 F.3d at 174. To defeat summary judgment, the plaintiff must "produce evidence to create a genuine issue of fact with respect to two points: whether the employer's articulated reason for its adverse action was a pretext and whether the real reason was . . . discrimination." <u>Quinones</u>, 436 F.3d at 289-90 (quoting <u>Thomas v. Eastman Kodak Co.</u>, 183 F.3d 38, 62 (1st Cir. 1999)). Thus, to survive summary judgment, Mr. Nguyen must offer some evidence at the third stage that the determinative cause of his termination was his race and/or national origin. <u>Id.</u> "Even in cases where elusive concepts such as motive or intent are at issue, summary judgment may be appropriate if the nonmoving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation." <u>Quinones</u>, 436 F.3d at 289 (quoting <u>Medina-Munoz</u>, 896 F.2d at 8). Further, "it is not the court's responsibility-

let alone within its power-to cull the entire discovery record looking for facts which might convert such a bald assertion [of discrimination] into a triable issue." Id. at 290 (internal citation omitted).

>   2. NMT Has Offered A Legitimate, Non-Discriminatory Business Reason For Mr. Nguyen's Termination.

Assuming that Mr. Nguyen is able to present evidence sufficient to establish a *prima facie* case of discrimination, NMT has produced sufficient credible evidence of its legitimate, non-discriminatory business reason for its decision to terminate Mr. Nguyen's employment, as it is required to do under the burden-shifting framework. See Quinones, 436 F.3d at 289; Benoit, 331 F.3d at 174. The Company terminated Mr. Nguyen's employment after it investigated an incident involving Mr. Nguyen and a co-worker, determined that a number of witnesses credibly informed the Company that Mr. Nguyen had aggressively gestured toward, yelled at and threatened Mr. Kan, and determined based upon all of the circumstances that Mr. Nguyen had behaved inappropriately and threatened a co-worker. See Morgan v. Mass. Gen. Hosp., 901 F.2d 186, 190 (1st Cir. 1990) (finding employer articulated legitimate reason for termination of employee where employee acted aggressively towards co-worker); Johnson v. Allyn & Bacon, Inc., 731 F.2d 64, 73 (1st Cir. 1984) (inability to get along with co-workers is a legitimate non-discriminatory reason for termination of employment). Although Mr. Nguyen denied requesting that Mr. Kan settle the dispute with him physically and now disputes that he yelled at and threatened Mr. Kan, seven witnesses said otherwise. There is no evidence that calls into question, let alone refutes, the undisputed reason offered by NMT to support Mr. Nguyen's termination.

>   3. Mr. Nguyen Cannot Show That NMT's Legitimate, Non-Discriminatory Business Reason For His Termination Was A Pretext For Discrimination.

Mr. Nguyen cannot produce any evidence of discrimination to show that NMT's asserted reason for his termination has no basis in fact and did not actually motivate NMT's decision. "[The]

plaintiff, if he is to defeat a properly documented motion for summary judgment, 'must offer some minimally sufficient evidence, direct or indirect, both of pretext and of the employer's discriminatory animus.'" Pagano v. Frank, 983 F.2d 343, 348 (1st Cir. 1993) (internal citation omitted).  Mr. Nguyen has produced no such evidence and, to the contrary, *has actually admitted that he has no evidence that any actions taken by NMT or even Mr. Kan were based in any way on his race or national origin.* (SOF at ¶ 18).  Indeed, when asked the reason for his belief that race and national origin were the motivating factors for NMT's actions with respect to his employment, Mr. Nguyen only stated that "by definition, if I'm a minority and if I have to go through a prolonged adverse employment action, by definition it's discrimination."  (Id.).  This is not the applicable legal standard.  As discussed above, Mr. Nguyen's conclusory allegations and unsupported speculations are insufficient to create a genuine issue of fact with respect to whether NMT's articulated reason for its adverse action was a pretext or whether the real reason was discrimination.  See Quinones, 436 F.3d at 289-90.

     Moreover, it is not NMT's burden to persuade the fact finder that its decision to terminate Mr. Nguyen was *correct*, as the focus of the pretext inquiry is on the perception of the decision maker and whether the employer believed its stated reason to be credible.  Mesnick v. Gen. Elec. Co., 950 F.2d 816, 824 (1st Cir. 1991); see also Griel v. Franklin Med. Ctr., 234 F.3d 731, 732 (1st Cir. 2000).  Here, there is no evidence that NMT did not truly believe that Mr. Nguyen had behaved inappropriately by yelling at and threatening Mr. Kan.  Accordingly, even if NMT's conclusion was wrong, which NMT denies, Mr. Nguyen cannot prove that the reason for his termination was discrimination and, thus, cannot prevail.  See Mesnick, 950 F.2d at 825 (stating "[c]ourts may not sit as super personnel departments, assessing the merits – or even the rationality – of employers'

14

nondiscriminatory business decisions").  Therefore, Mr. Nguyen's claim of race and national origin discrimination fails as a matter of law.[8]

    4. <u>Mr. Nguyen's Claim of Invasion of Privacy Cannot Be Sustained As A Matter of Law.</u>

  Massachusetts General Laws, Chapter 214, Section 1B defines the parameters of invasion of privacy claims by establishing that "[a] person shall have a right against unreasonable, substantial or serious interference with his privacy."  To constitute an invasion of privacy, "the invasion must be both unreasonable *and* serious or substantial."  <u>French v. United Parcel Serv., Inc.</u>, 2 F.Supp.2d 128, 131 (D. Mass. 1998).  At no time during Mr. Nguyen's employment did NMT invade Mr. Nguyen's privacy or obtain details regarding his school record, medical record or daily activities, except to the extent disclosed by Mr. Nguyen.  (SOF at ¶ 19).  Further, although Mr. Nguyen alleges in his Complaint that he is "certain that [his] privacy has been invaded," he admits in his deposition that he has no evidence that NMT invaded his privacy.  (<u>Id.</u>).  Therefore, Mr. Nguyen's claim of invasion of privacy fails because conclusions, allegations and beliefs unsupported and unsubstantiated by admissible evidence do not establish genuine issues of material fact and cannot defeat summary judgment.  <u>See</u> Fed. R. Civ. Pro. 56(e); <u>Celotex</u>, 477 U.S. at 322-24 (1986); <u>Medina-Munoz</u>, 896 F.2d at 8.

---

[8] Although Mr. Nguyen has not clearly stated a claim for retaliation, to the extent that the allegations in his Complaint could be construed to state such a claim, the claim would fail.  In order to establish a claim of discriminatory retaliation, a plaintiff must produce evidence that (1) he engaged in protected conduct under Title VII; (2) he experienced an adverse employment action; and (3) a causal connection exists between the protected conduct and the adverse action.  <u>Kosereis v. State of Rhode Island</u>, 331 F.3d 207, 217 (1st Cir. 2003); <u>Douglas</u>, 422 F.Supp.2d at 278.  Mr. Nguyen did not engage in conduct protected by law prior to his termination because, while he complained about Mr. Kan's use of obscenities, he never complained that he was being discriminated against or harassed based on his race or national origin.  (SOF at ¶ 18).  Further, any claim of retaliation would fail because Mr. Nguyen cannot show any causal connection between his unsubstantiated complaints of harassment by Mr. Kan and his termination for threatening Mr. Kan.

### III.     CONCLUSION

Following discovery in this matter, the record is as devoid of evidence supporting Mr. Nguyen's claims as it was when the Equal Employment Opportunity Commission and Massachusetts Commission Against Discrimination issued their findings of lack of probable cause. Mr. Nguyen continues to rely solely on his own unsubstantiated and conclusory assertions, and there is no record evidence whatsoever of discrimination, harassment or any other unlawful conduct by anyone at NMT. Mr. Nguyen himself admits that he has no evidence that any actions taken by NMT or even by Mr. Kan were based in any way on his race or national origin, that neither NMT nor Mr. Kan ever said anything to him about his race or national origin, and that he has no evidence that NMT invaded his privacy. For all of the foregoing reasons, NMT respectfully requests that this Court enter summary judgment on all counts of Mr. Nguyen's Complaint.

NMT MEDICAL, INC.,

By its attorneys,

/s/ Julie Murphy Clinton
Laura E. Schneider (BBO # 562030)
Julie Murphy Clinton  (BBO# 655230)
Wilmer Cutler Pickering Hale and Dorr LLP
60 State Street
Boston, MA  02109
(617) 526-6000

Dated: August 29, 2006

## **CERTIFICATE OF SERVICE**

I, Julie Murphy Clinton, hereby certify that on August 29, 2006, I caused a copy of the foregoing document to be served, by electronic and first class mail, upon plaintiff Loi Tan Nguyen.

/s/ Julie Murphy Clinton
Julie Murphy Clinton

US1DOCS 5785942v3