UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                                  )
**LOI TAN NGUYEN,**           )
                                                  )
**Plaintiff**                        )
                                                  )
v.                                               )        **Civil Action No. 04-CV-11781-DPW**
                                                   )
**NMT MEDICAL, INC.,**      )
                                                 )
**Defendant.**                 )
_____)

**STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF
NMT MEDICAL, INC.'S MOTION FOR SUMMARY JUDGMENT**

      Pursuant to Federal Rule of Civil Procedure 56 and Local Rule 56.1, defendant NMT Medical, Inc. submits the following Statement of Undisputed Material Facts in conjunction with and in support of its Motion for Summary Judgment on all counts of plaintiff Loi Tan Nguyen's Complaint. NMT Medical, Inc. contends that there is no genuine issue to be tried with respect to the following material facts:

**Mr. Nguyen's Employment With NMT Medical, Inc. And Termination From Employment**

      1.     NMT Medical, Inc. ("NMT" or the "Company"), based in Boston, Massachusetts, designs, develops and markets proprietary implant technologies that allow cardiologists to treat cardiac sources of stroke. (Affidavit of Cara Hard ("Hard Aff.") at ¶ 4 (Ex. 1)).[1] The Company's products are designed to offer alternative approaches to existing complex treatments, thereby reducing patient trauma, shortening hospitalization and recovery times, and lowering overall treatment costs. (Id.). The Company is committed to equal employment opportunity and employs a diverse workforce of approximately 99 employees, of which 66% are Caucasian, 32%

---

[1] All citations are to deposition testimony, documents produced during discovery, affidavits or papers previously filed with the Court, and are attached to the separately filed Affidavit of Julie Murphy Clinton, Esq. Citations to the exhibits attached to that Affidavit are abbreviated as "Ex."

are Asian (primarily of Cambodian and Vietnamese descent) and the remainder are Hispanic and African American.  (Id. at ¶ 5).

2.      Mr. Nguyen began his employment at NMT on May 20, 2002 as a Senior Technician in the Research and Development Department.  (Hard Aff. at ¶ 6 (Ex. 1); Deposition of Loi Tan Nguyen ("Nguyen Dep.") at p. 18 (Ex. 2)).  In this position, Mr. Nguyen was responsible for performing laboratory-based support for Research and Development projects.  (Hard Aff. at ¶ 6 (Ex. 1)).  He was supervised by Lee Core, a Senior Engineer in the Research and Development Department, and worked in a department with fourteen employees, of which three were Asian.  (Id. at ¶¶ 6-7).

3.      Mr. Nguyen is Asian and of Vietnamese descent.  (Complaint at ¶ 3).

4.      Mr. Nguyen alleges that he and co-worker Kellywan Kan were initially friendly but that their relationship gradually changed.  (Id. at ¶ 4).  Mr. Nguyen further alleges that he occasionally began to hear Mr. Kan use profanity in his cubicle by himself and that, based on Mr. Kan's voice and tone, Mr. Nguyen believed Mr. Kan was just speaking to himself.  (Id.).  However, Mr. Nguyen states that, about a month later, Mr. Kan stared away from him to avoid Mr. Nguyen's greetings when they passed each other and did not respond when Mr. Nguyen would say "hi" to him.  (Id.).  As a result, Mr. Nguyen states that their friendly relationship ended.  (Id.).  Mr. Nguyen further alleges that, as time went on, Mr. Kan's use of obscenities became more aggressive and that Mr. Kan directed his voice towards Mr. Nguyen's cubicle.  (Id.).  In particular, Mr. Nguyen states that Mr. Kan mostly said "shit" and directed this word at Mr. Nguyen by saying "shit…man, shit…man."  (Id.).  However, Mr. Nguyen admits that Mr. Kan only swore in his cubicle and that the only reason Mr. Nguyen believed Mr. Kan was directing profanity at him was because of Mr. Kan's "weird personality" and because Mr.

Nguyen did not believe there was any other reason for Mr. Kan to say profanity. (Nguyen Dep. at pp. 24-25 (Ex. 2)). Further, although Mr. Nguyen alleges that other NMT employees could occasionally hear the language Mr. Kan allegedly used towards him, no NMT employee ever reported hearing, seeing or perceiving Mr. Kan to be directing profanity at Mr. Nguyen. (Complaint at ¶ 4; Hard Aff. at ¶ 11 (Ex. 1)).

5.     After working at the Company for approximately two months, Mr. Nguyen sent an e-mail to Cara Hard, NMT's Human Resources Manager, complaining that Mr. Kan, a Senior Technician, was swearing in his cubicle. (Hard Aff. at ¶¶ 3, 8 (Ex. 1)). Ms. Hard immediately met with Mr. Nguyen, who told her he was not sure whether Mr. Kan was directing the profanity at him. (Id.). Ms. Hard asked Mr. Kan's supervisor, Sean Forde, to meet with Mr. Kan and discuss Mr. Nguyen's concerns. (Id.). Mr. Nguyen alleges that he told Ms. Hard and Mr. Core that he suspected Mr. Kan's actions were being instigated by someone within the department. (Complaint at ¶ 4). Despite Mr. Nguyen's allegation, in his deposition, he admitted that he has no evidence that anyone at NMT instigated Mr. Kan's behavior. (Nguyen Dep. at pp. 61-62 (Ex. 2)).

6.     Sean Forde, Mr. Kan's supervisor, then met with Mr. Kan on or about August 1, 2002 regarding Mr. Nguyen's complaint to Ms. Hard about Mr. Kan's use of profanity while in his cubicle. (Affidavit of Sean Forde ("Forde Aff.") at ¶ 4 (Ex. 3)). Mr. Kan, who is also Asian but of Cambodian descent, admitted that he occasionally swore in his cubicle, but stated that his words were in no way directed at Mr. Nguyen. (Forde Aff. at ¶ 4 (Ex. 3); Affidavit of Kellywan Kan ("Kan Aff.") at ¶¶ 3-4 (Ex. 4)). Mr. Forde instructed Mr. Kan to cease using profanity in the workplace. (Forde Aff. at ¶ 4 (Ex. 3); Kan Aff. at ¶ 4 (Ex. 4)).

7. Approximately one week after Ms. Hard's investigation, Mr. Nguyen told his supervisor and Ms. Hard that his concerns regarding Mr. Kan had been addressed in a satisfactory manner and that the situation had improved. (Hard Aff. at ¶ 9 (Ex. 1); Affidavit of Lee Core ("Core Aff.") at ¶ 7 (Ex. 5)).[2]

8. Mr. Nguyen further alleges that, on an occasion prior to his May 28, 2003 complaint, when he and Mr. Kan were working in the laboratory, Mr. Kan was walking back and forth with a caliper in his hand gesturing back and forth and Mr. Nguyen believed Mr. Kan was trying to intimidate him based on the way Mr. Kan walked and held the caliper. (Nguyen Dep. at pp. 53-56 (Ex. 2)).[3] However, Mr. Nguyen admits that Mr. Kan did not say anything to him while walking back and forth with the caliper. (Id. at p. 55). In addition, Mr. Nguyen admits that he never reported this incident to anyone at NMT. (Id. at pp. 52-53).

9. On May 28, 2003, almost one year after his initial complaint, Mr. Nguyen again spoke to Ms. Hard about Mr. Kan. (Hard Aff. at ¶ 10 (Ex. 1)). Mr. Nguyen objected to Mr. Kan's continued use of obscenities in his cubicle (although he acknowledged that Mr. Kan never directed any profanity at him) and stated that Mr. Kan made him feel uncomfortable. (Id.). Ms. Hard asked Mr. Nguyen to explain specifically what Mr. Kan was doing to make him uncomfortable, but Mr. Nguyen abruptly left Ms. Hard's office. (Id.)

10. The Company took Mr. Nguyen's concern seriously and took steps to investigate his complaint. (Id. at ¶ 11). Ms. Hard asked Mr. Core to meet with Mr. Nguyen to ascertain why Mr. Nguyen felt uncomfortable around Mr. Kan. (Id. at ¶ 11). Mr. Core reported back to Ms. Hard that he had met with Mr. Nguyen on several occasions but Mr. Nguyen merely stated

---

[2] Although Mr. Nguyen does not remember stating that his concerns had been addressed (Nguyen Dep. at p. 31 (Ex. 2)), both Ms. Hard and Mr. Core testify that he did so.

[3] A caliper is a small measuring tool used regularly by engineers at the Company. (Hard Aff. at ¶ 20 (Ex. 1)).

that Mr. Kan engaged in "abnormal" conversation, namely by saying "shhh" as Mr. Nguyen walked by his workspace and making sounds and gestures reflecting his frustrations. (Hard Aff. at ¶ 11 (Ex. 1); Core Aff. at ¶ 8 (Ex. 5)).

11. Ms. Hard also asked Mr. Forde to meet with Mr. Kan to discuss Mr. Nguyen's complaint. (Hard Aff. at ¶ 11 (Ex. 1)). Mr. Forde met with Mr. Kan, who admitted to occasionally using obscenities in his cubicle. (Forde Aff. at ¶ 5 (Ex. 3); Kan Aff. at ¶ 5 (Ex. 4)). Mr. Kan indicated that he would not swear in his cubicle. (Forde Aff. at ¶ 5 (Ex. 3); Kan Aff. at ¶ 5 (Ex. 4)).

12. During the investigation of Mr. Nguyen's complaint, Ms. Hard also interviewed Blong Xiong, a Senior Technician who is Asian and of Laotian descent. (Hard Aff. at ¶ 11 (Ex. 1); Affidavit of Blong Xiong ("Xiong Aff.") at ¶ 3 (Ex. 6)). Mr. Xiong stated that he did not hear Mr. Kan make noises or curse at Mr. Nguyen, nor harass Mr. Nguyen in any way. (Xiong Aff. at ¶ 4 (Ex. 6)). In addition, no other NMT employee ever reported hearing, seeing or perceiving Mr. Kan to be directing obscenities at Mr. Nguyen. (Hard Aff. at ¶ 11 (Ex. 1)). Overall, the Company's investigation did not reveal any information indicating Mr. Nguyen's complaint had any merit. (Id.).[4] However, the Company still wanted Mr. Nguyen to feel comfortable in his workplace and, therefore, drafted a memorandum of understanding that Mr. Nguyen and Mr. Kan signed on June 5, 2003. (Hard Aff. at ¶ 11 (Ex. 1); Memorandum Agreement between Mr. Nguyen and Mr. Kan ("Memorandum Agreement") (Ex. 7)). In this memorandum, NMT agreed to move Mr. Nguyen's workspace so that he would not be sitting in the cubicle next to Mr. Kan and Mr. Nguyen agreed to notify his supervisor if Mr. Kan

---

[4] Mr. Nguyen alleges that NMT responded to his complaints regarding Mr. Kan by saying that Mr. Kan has a habit of using profanity and there is nothing the Company can do to stop him. (Complaint at ¶ 4). Although the Company disputes this allegation and denies that it ever made such statements, this is not a material fact for purposes of NMT's Motion.

conducted himself in a way that made Mr. Nguyen feel uncomfortable. (Hard Aff. at ¶ 11 (Ex. 1); Memorandum Agreement (Ex. 7)).

  13. The following month, on June 23, 2003, Mr. Kan was joking with a co-worker, Andrzej Chanduszko, when an incident involving Mr. Kan and Mr. Nguyen occurred. (Kan Aff. at ¶ 6 (Ex. 4); Affidavit of Andrzej Chanduszko "Chanduszko Aff." at ¶ 4 (Ex. 8)). After the incident between Mr. Nguyen and Mr. Kan, Ms. Hard and Mr. Core tried to speak to Mr. Nguyen, but Mr. Nguyen refused to discuss the matter, except to deny saying anything to Mr. Kan that could be interpreted as a request to settle the dispute physically. (Hard Aff. at ¶ 12 (Ex. 1)). Mr. Nguyen then went to call the police to lodge a complaint against Mr. Kan. (Id.) Shortly thereafter, the Boston Police Department arrived at NMT and interviewed Mr. Nguyen and Ms. Hard. (Id.). When Mr. Nguyen was unable to identify any action taken against him by Mr. Kan, the police stated that they could do nothing but file a report of his complaints. (Id.). Ms. Hard told Mr. Nguyen that he should go home and should not report to work until after the Company investigated the day's events. (Id.).

  14. Over the several days following June 23, 2003, Ms. Hard completed a thorough investigation of the incident between Mr. Nguyen and Mr. Kan, interviewing all the witnesses to the event. (Id. at ¶ 13). As part of her investigation, on June 23, 2003, Ms. Hard obtained a written statement regarding the incident from Mr. Forde, in which he stated that Mr. Xiong had alerted him and Mr. Core to the incident. (Hard Aff. at ¶ 13 (Ex. 1); E-mail from Mr. Forde Dated June 23, 2003 ("Forde E-mail") (Ex. 9)). Mr. Forde reported that when he entered the work area, Mr. Nguyen was speaking in an angry, raised voice, gesturing past Mr. Chanduszko, directing aggression toward Mr. Kan and telling Mr. Kan that he wanted him to "go outside". (Hard Aff. at ¶ 13 (Ex. 1); Forde E-mail (Ex. 9)). Mr. Forde reported that Mr. Kan was trying to

explain to Mr. Nguyen that he was not talking about him.  (Hard Aff. at ¶ 13 (Ex. 1); Forde E-mail (Ex. 9)).  Mr. Forde also reported that he asked Mr. Kan to return to his office area, which Mr. Kan did.  (Hard Aff. at ¶ 13 (Ex. 1); Forde E-mail (Ex. 9)).  Mr. Forde stated that he then asked Mr. Nguyen to return to his work area, but that Mr. Nguyen continued behaving aggressively, stating "Let's go outside, I want to go outside."  (Hard Aff. at ¶ 13 (Ex. 1); Forde E-mail (Ex. 9)).  Mr. Forde reported that when he again asked Mr. Nguyen to return to his work area and stop his aggression, Mr. Nguyen began to argue and said that he did not have to stop and could say whatever he wanted to say.  (Hard Aff. at ¶ 13 (Ex. 1); Forde E-mail (Ex. 9)).  Mr. Forde stated that he repeated his request for Mr. Nguyen to return to his work area two additional times and that Mr. Nguyen remained defiant.  (Hard Aff. at ¶ 13 (Ex. 1); Forde E-mail (Ex. 9)).  Mr. Forde reported that Mr. Core then took Mr. Nguyen to a private area.  (Hard Aff. at ¶ 13 (Ex. 1); Forde E-mail (Ex. 9)).

15.     As part of the investigation, Ms. Hard also spoke with Mr. Chanduszko, Mr. Core, Mr. Kan, Mr. Xiong, John Wright (Director of Research and Development) and Carol Ryan (Vice President of Research and Development).  (Hard Aff. at ¶ 14 (Ex. 1)).  Mr. Chanduszko informed Ms. Hard that he and Mr. Kan had been joking with each other when Mr. Nguyen abruptly approached and yelled that Mr. Kan should stop making fun of him.  (Id.).  Mr. Chanduszko also reported that Mr. Nguyen asked Mr. Kan if he wanted to "take this outside" and repeatedly asked Mr. Kan if he wanted to settle the issue outside.  (Id.).  Mr. Core reported that, when Mr. Xiong brought him to Mr. Nguyen and Mr. Kan, Mr. Nguyen was yelling and aggressively gesturing to Mr. Kan, saying "Let's go outside.  You want to go outside?"  (Id.).  He confirmed that, when Mr. Forde asked Mr. Nguyen and Mr. Kan to return to their work areas, Mr. Nguyen did not comply and instead yelled at Mr. Kan, implying that he wanted to fight

outside. (Id.). Mr. Core also reported that he then escorted Mr. Nguyen away from Mr. Kan but that Mr. Nguyen remained defiant and tried to break away. (Id.). Mr. Kan reported that Mr. Nguyen raised his voice to him from across the room and then came over to him, acting angry and aggressive. (Id.). Mr. Kan stated that he tried to explain that he was not talking about or laughing at Mr. Nguyen, but that Mr. Nguyen continued to aggressively gesture and say something to him about going outside. (Id.). Mr. Kan also reported that he was afraid of Mr. Nguyen. (Id.). Mr. Xiong reported that he saw Mr. Nguyen run up to Mr. Kan and heard him ask Mr. Kan why he was laughing at Mr. Nguyen. (Id.). Mr. Xiong reported that Mr. Chanduszko tried to explain that he and Mr. Kan were not talking about Mr. Nguyen and stood between Mr. Nguyen and Mr. Kan, attempting to direct Mr. Nguyen back to his work area. (Id.). Mr. Xiong stated that he then left to get Mr. Core and Mr. Forde and that, when he returned, Mr. Nguyen was walking back and forth and loudly repeating "Let's go outside. You want to go outside?" to Mr. Kan. (Id.). Mr. Xiong reported that Mr. Core then took Mr. Nguyen out of the lab area. (Id.). Mr. Wright and Ms. Ryan also both reported hearing Mr. Nguyen yell at and threaten Mr. Kan. (Id.).

16.     Ms. Hard found the seven witnesses to the event to be credible and, despite Mr. Nguyen's statement that he did not say anything to Mr. Kan about settling the dispute physically, believed that Mr. Nguyen had behaved inappropriately, yelling at and threatening Mr. Kan. (Id. at ¶¶ 13-14).

17.     In light of the investigation results, the Company believed that Mr. Nguyen posed a safety risk to Mr. Kan and its other employees. (Id. at ¶ 15). On June 26, 2003, the Company informed Mr. Nguyen that it had decided to terminate his employment due to his threats against a co-worker. (Id. at ¶ 16).

**Facts Relating to Mr. Nguyen's Allegations Regarding Discrimination and Harassment**

18.     At no time during Mr. Nguyen's employment did he complain that he was being harassed or discriminated against based on his race or national origin. (Id. at ¶ 17). Further, Mr. Nguyen admits that neither NMT nor Mr. Kan ever said anything to him about his race or national origin. (Nguyen Dep. at pp. 101-102 (Ex. 2)). Mr. Nguyen admits that he has no evidence that any actions taken by NMT or even by Mr. Kan were based in any way on his race or national origin. (Id. at p. 65). In addition, Mr. Nguyen admits that he has no evidence that NMT instigated Mr. Kan's behavior. (Id. at p. 61-62). Finally, when asked the reason for his belief that race and national origin were the motivating factors for NMT's actions with respect to his employment, Mr. Nguyen stated that "by definition, if I'm a minority and if I have to go through a prolonged adverse employment action, by definition it's discrimination." (Id. at p. 100).

**Facts Relating to Mr. Nguyen's Allegations Regarding An Invasion of Privacy**

19.     Although Mr. Nguyen states in his Complaint that he is "certain that [his] privacy has been invaded," he admits in his deposition that he has no evidence that NMT invaded his privacy. (Complaint at ¶ 4; Nguyen Dep. at p. 87 (Ex. 2)). Further, at no time during Mr. Nguyen's employment did he ever complain to NMT about an alleged invasion of privacy. (Hard Aff. at ¶ 18 (Ex. 1)). At no time during Mr. Nguyen's employment did NMT invade his privacy or obtain details regarding his school record, medical record or daily activities, except to the extent disclosed by Mr. Nguyen. (Id.).

**Facts Relating to the Procedural Posture of Mr. Nguyen's Claim**

20.     Following his termination from employment with NMT, Mr. Nguyen filed a charge of discrimination against NMT with the Equal Employment Opportunity Commission (the "EEOC") on March 29, 2004, claiming that NMT's decision to end his employment was

9

based on his race and national origin and violated Title VII of the Civil Rights Act of 1964 and M.G.L. c. 151B.  (Hard Aff. at ¶ 19 (Ex. 1)).  On May 21, 2004, the EEOC issued a determination dismissing Mr. Nguyen's claim and stating that, based upon its investigation, it was unable to conclude that Mr. Nguyen's charge established a violation of Title VII or Chapter 151B.  (Hard Aff. at ¶ 19 (Ex. 1); EEOC Dismissal and Notice of Rights (Ex. 10)).  Similarly, the MCAD issued a lack of probable cause finding on June 9, 2004.  (Hard Aff. at ¶ 19 (Ex. 1)).  Mr. Nguyen then appealed the MCAD's dismissal of his complaint.  (Id.).  On August 26, 2004, the MCAD held a hearing to consider Mr. Nguyen's appeal of the lack of probable cause finding.  (Id.).  On September 9, 2004, the MCAD issued a determination affirming the lack of probable cause finding and stating that Mr. Nguyen failed to establish sufficient evidence to determine that NMT committed an unlawful act of discrimination.  (Hard Aff. at ¶ 19 (Ex. 1); MCAD Notice (Ex. 11)).  Mr. Nguyen subsequently filed his claim in federal court on August 13, 2004.  (Hard Aff. at ¶ 19 (Ex. 1); Complaint).

        NMT MEDICAL, INC.,

        By its attorneys,

        /s/ Julie Murphy Clinton
        Laura E. Schneider (BBO # 562030)
        Julie Murphy Clinton  (BBO# 655230)
        Wilmer Cutler Pickering Hale and Dorr LLP
        60 State Street
        Boston, MA  02109
        (617) 526-6000

Dated:  August 29, 2006

## CERTIFICATE OF SERVICE

I, Julie Murphy Clinton, hereby certify that on August 29, 2006, I caused a copy of the foregoing document to be served, by electronic and first class mail, upon plaintiff Loi Tan Nguyen.

/s/ Julie Murphy Clinton
Julie Murphy Clinton
