UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

LOI TAN NGUYEN,

        Plaintiff,

v.                                                                  Civil Action No. 04-CV-11781-DPW

NMT MEDICAL, INC.

        Defendant.

### PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Plaintiff submits this response to defendant's motion for summary judgment. Because defendant have failed to meet their burden of demonstrating that there is no dispute as to any material fact, and because the facts set forth in attached evidence show that there are genuine issues as to material fact for dispute at trial. This court should deny defendants' motion.

### BACKGROUND

NMT Medical hired plaintiff as an engineering technician working under Mr. Lee Core's supervision on a new product in engineering department. Only after a few weeks working at NMT Medical, a co-worker, Mr. Kellywan Kan, began to harass plaintiff with profanity although not in direct manner but in an implied aggressive manner that created a hostile work environment. Plaintiff sent the first email (Plaintiff's Affidavit (Aff.) at p.48 (Ex.1)) complaining the harassment to Ms. Cara Hart (Human Resources Manager) and

continued with four subsequent verbal complaints thereafter. Employer responded plaintiff's complaints by one statement "Mr. Kan has habit using profanity there is nothing the company can do" and had never conducted an investigation to remedy the harassment. Finally the incident between plaintiff and Mr. Kan has caused the termination of plaintiff's employment with NMT Medical.

Sufficient circumstantial evidences showed that employer manufactured the constructive harassment and wrongful termination motivated by race and national discrimination violating Title VII of Civil Right Acts of 1964. What motivated employer to plot the harassment? From the context and the manner in which employer handled the harassment plaintiff believes that employer plotted the harassment as a method to transfer plaintiff to manufacturing department to work in production line.

## RESPONSE TO MEMORANDUM IN SUPPORT OF NMT MEDICAL, INC.'S MOTION FOR SUMMARY JUDGMENT

I.  **REPONSE TO DEFENDANT'S SUMMARY OF UNDISPUTED MATERIAL FACTS**

   A.   The Company and Plaintiff's Employment

From plaintiff's experience in medical device industry, the medical device used to treat disease or wounded in the human body are very small, delicate, tedious and hard to assemble, therefore the dexterity from little and steady hands is needed to handle this work in the production work environment. Asian workers are dexterous with their little hands doing assembly work in production in medical device industry. Furthermore, most Asian workers working in this field are new immigrants who have language barriers and/or limited education to qualify for better position. It is not only NMT Medical hired more Asian in production line but also all companies in medical device field located near Asian community. In fact the fact is immaterial to the plaintiff's complaint because it does not mean that other Asian employees must suffer the same or similar adverse employment actions in order to conclude that employer was motivated by discrimination. The adverse employment actions that plaintiff suffered were set up under specific circumstances with a reasonable fact finder could infer that employer acted with discrimination motivated.

B.  Plaintiff's Complaints Regarding A Co-Worker's Use of Profanity

Plaintiff sent an email to Human Resources Manager Cara Hart on July 31, 2002 complaining the alleged harassment by a co-worker, Mr. Kan (Id.). In the email plaintiff emphasized "intimidated" in bold face to indicate that the situation was serious and unsafe, also used "worker(s)" instead "worker" to imply that more than one employee involved in harassment. Despite the seriousness of work environment, two days later Ms. Hart responded that *"Kellywan has habit saying profanity, there is nothing the company can do"* and later Mr. Lee (plaintiff's supervisor) also gave the same answer. From then on Mr. Kan continued to use profanity quite often, more aggressive, and direct his voice at plaintiff's cubicle although not in the direct manner such as calling plaintiff's name but with an obviously implied tone and voice. From the correlation of employer's responses and the way Mr. Kan used profanity to harass plaintiff was certain that employer was manufacturing the harassment.

Plaintiff continued complaining the harassment with Ms. Hart and Mr. Lee even though plaintiff knew that the harassment would never be stopped. Between the first email complaint on July 31, 2002 and the last complaint on May 28, 2003 plaintiff verbally reported Mr. Kan's continued harassment with Mr. Lee twice. So plaintiff complained with Ms. Hart and Mr. Lee five times during period of less than a year although plaintiff could complain a hundred times for the aggressive and pervasive harassment. This was true according to Ms. Hart's record, on May 28, 2003 plaintiff spoke to Ms. Hart that Mr. Lee had spoken to plaintiff following plaintiff's complaint in August 2002, but that plaintiff had never heard an explanation regarding Kellywan's behavior (Id. at p.52 paragraph 6). On June 23, 2003 when plaintiff, Ms. Hart and Mr. Lee met after the incident on the same day, plaintiff reminded that "plaintiff's spoken to Ms. Hart and Mr. Lee three times and nothing was done". Ms. Hart corrected plaintiff and said plaintiff has come to her twice. Mr. Lee did not respond (Id. at p.104 paragraph 9). Silence implies consent. So there is objective and credible evidence to show that plaintiff had complained with Ms. Hart and Mr. Lee five times during this period of less than a year. In the memorandum defendant argued that plaintiff had not spoken to supervisor after the first complaint in August 2002 and until plaintiff spoke again to Ms. Hart in May 2003. ***This was not true based on the employer's record.***

Defendant claimed that it took plaintiff's concern seriously and took steps to investigate plaintiff's complaint regarding Mr. Kan's use of profanity. Plaintiff had no knowledge that employer had conducted an investigation and plaintiff had never been given a chance to review and signed any investigation report, so did Mr. Kan. Until after plaintiff's employment was terminated plaintiff realized that only behind the scene Ms. Hart took notes and supervisors exchanged emails (Aff. (Ex.1)). All the arguments in the defendant's memorandum were relying on these notes and emails. The contents of the notes and emails were obviously only filled with classic "he said, she said" texture, repetitious opinions rather than eliciting facts, attempts to protect Mr. Kan from his instigated wrongdoing, mixing between accuracy and inaccuracy, making careless and blatant racial and national comments, statements with no goal directed such as "I wonder, I guess, I hope etc.". The purpose was to fill up some spaces on paper to protect itself from liability.

The memo (Id. at p.43) to assign plaintiff a new workspace signed by plaintiff, Mr. Kan, and supervisors on June 5, 2003 was clearly ineffective and just pretending to remedy the situation. According to Ms. Hart's notes plaintiff was resisting to move saying it wouldn't make any difference because the new assigned location was in an open space, directly opposite to Mr. Kan's work station and not too far from Mr. Kan's cubicle (Aff. (Ex.2)). Plaintiff at first refused to sign the memo but later on realized it is better to sign than refuse because in the future the employer may use it as the evidence to show that plaintiff denied the employer's remedy. It was not only ineffective, pretending remedy, but also the employer's unfair treatment between plaintiff and Mr. Kan by moving plaintiff's workspace not Mr. Kan's. Based on the objective and true facts plaintiff has proved herein show that the facts defendant argued in the memorandum supporting summary judgment are unworthy of credence.

C.      Plaintiff's Incident With A Co-Worker And NMT's Resulting Investigation.

On June 23, 2003, Mr. Kan was talking about sleep problem in front of his cubicle with Mr. Andrzej Chanduszko (senior engineer) and Mr. Blong Xiong (senior technician) and everyone was laughing loudly that plaintiff could hear clearly from plaintiff's desk. It was intent to make fun of plaintiff because plaintiff has chronic insomnia that everyone knew of. This was not the first time but occasionally had occurred in the past. Under

normal circumstances there was nothing to laugh loudly because the nature of the content of asking another employee whether having enough sleep or not is normal and does not contain any trigger for laughing loudly. Plaintiff came to talk to Mr. Kan directly and asked him if he wants to make fun of or use profanity to harass another co-worker he should do it *outside* of the building beside the exchange of few more statements. There was no threatening word. When Mr. Sean Ford (Mr. Kan's supervisor) came to the scene he really made the situation even worse by pointing finger into plaintiff's face and ordering plaintiff to stop talking in a mean manner and voice even though he did not really know what was going on. Moment later employer used the word "*outside*" to fabricate false accusations "I want to go outside; I want to fight outside etc." Since it was a fabrication at the scene, the fabricated accusation was inconsistent. According to police's report (Aff. at p.103 (Ex.1)) Ms. Hart reported that other witnesses on one occasion overheard plaintiff said to the suspect "Let's take it outside". The next day Mr. Kan affirmed twice with Ms. Hart that there was no threatening word (Id at p.109 paragraph 6, p.113). Mr. Ford sent an email to Ms. Hart saying that plaintiff threatened Mr. Kan "Let's go outside, I want to go outside".

The incident was more than a normal conversation but nothing like employer had described and fabricated. Plaintiff believed that the work environment was very intolerable and so unsafe that plaintiff decided to call the police. Police arrived and logged a report regarding the incident without Mr. Kan's present. Plaintiff noticed that Mr. Kan was leaving abruptly as soon as he learned police would arrive.

Employer can terminate employee's employment at will with or without reason. However, it cannot terminate an employee with such a reason (physically threatened a co-worker) without determinative evidence.

D. <u>Facts Related to Plaintiff's Claim of Invasion of Privacy.</u>

There was occasion plaintiff overheard other employees mentioned plaintiff's personal information. Mr. Lee on one occasion said "oh, he got both A's on electric circuit theory". Electric circuit theory I and II were engineering classes plaintiff took long time ago at UMass Boston and plaintiff got both A's. On another occasion plaintiff overheard group of engineers mentioned softly about plaintiff's landlord name. Everyone in the department knew plaintiff has chronic insomnia. Making fun on plaintiff's insomnia by Mr. Kan and

other employees was intent. So plaintiff believes plaintiff's privacy had been invaded. Even though plaintiff has no evidence in proving the allegation, invasion of privacy has the same motive as the harassment and other adverse actions, thus it can be further discovered in the trial.

## II.  LEGAL ARGUMENT

Since this claim of race and national discrimination rely on circumstantial evidences, it can be evaluated under similar three-prong burden shifting framework in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). First, plaintiff establishes a prima facie case. (1) Plaintiff is a member of a protected class; (2) Plaintiff was the only employee who suffered severely and pervasively adverse employment actions under circumstances that give rise to an inference of discrimination. Second, after plaintiff has established a prima facie case, the burden of production shifts to the defendant to produce some evidence of legitimate, non-discrimination reason for its actions. Third, if defendant sustains the burden, the presumption of discrimination dissipates. Plaintiff then has an opportunity to present evidence showing that defendant's evidence and stated reason are false, inconsistent, bias, exaggerated, implausible, contrary to sound business decision making, contradictive to employer's proffered legitimate reasons for its action that reasonable fact finder could rationally find them unworthy of credence and hence infer that the employer did not indeed act for the asserted non-discrimination reasons.

*PRIMA FACIE* CASE:

To establish *prima facie* case plaintiff must prove that 1) Plaintiff is a member of protected class (Vietnamese descent) 2) Plaintiff was the *only* employee in the company who suffered severely and pervasively adverse employment actions including: a) Employer constructively, recklessly and willfully terminated plaintiff's employment; b) The manner and the context in which employer handled the plaintiff's harassment complaint constituted "*ratification*" making employer a "*joint participant*" in the manufactured harassment; c) Employer invaded and published plaintiff's privacy within the company without plaintiff's consent.

Proving *prima facie* case element (a): Plaintiff *denies* physically threatening co-worker, Mr. Kan. Employer determined to terminate plaintiff's employment regardless Mr. Kan affirmed with Ms. Hart on two separate interviews that he did not recall threatening. There is no record showing employer had interviewed with six other witnesses who had knowledge about the incident.

For employer to claim that it promptly investigated the incident in good faith and appropriately determined terminating plaintiff's employment, employer must be able to show the followings: It conducted a thorough investigation in good faith and appropriately made determination. A good faith investigation must meet standards such as promptness, impartiality, thoroughness, appropriate determination and finally all the facts, evidence, information gathered during the investigation must be accurately and fully documented. Witnesses must be given a chance to review for accuracy and sign the investigatory reports. Most of the defendant's facts argued in the memorandum for summary judgment were based on groundless undocumented evidence or arbitrarily fabricated notes by Ms. Hart and supervisor's emails.

Proving *prima facie* case in (b) plaintiff would like to show that the manner and the context in which employer handled the harassment complaint constituted *ratification* making employer a *joint participant* in the constructive harassment and willful termination. Despite the fact that employer had acknowledged the work environment was hostile and unsafe from plaintiff's first email complaint and plaintiff's reaction (Id at p.82). indicating the harassment was severe employer did not honestly investigated the harassment complaint to stop and prevent the continued harassment. The unique answer to plaintiff's complaints by Ms. Hart and Mr. Lee was "Kellywan has habit of saying profanity there is nothing the company can do".

There are sufficient circumstantial evidences to prove that employer manufactured the harassment with malicious intent to hurt plaintiff as follows: (1) Mr. Kan's hostility and harassment against plaintiff began without a reason in the first month of plaintiff employment at NMT Medical. (2) Despite plaintiff complained Mr. Kan's harassment with employer five times employer never had an attempt to resolve the harassment. (3) In the background Ms. Hart took notes and supervisors exchanged emails in a completely controlled manner as to protect itself from liability and to cover up for Mr. Kan's

misconduct in case plaintiff files a lawsuit. Even if employer claimed it conducted investigation, the investigation was incompetent and pretending. Employer failed to prove that it promptly investigated allegations of misconduct in good faith. (4) High ranking management (President, Vice President, Department's Director and Manager) never responded to the harassment's complaints. This suggested that high-ranking management avoided directly participating in the constructive harassment (5) Employer pretended to remedy Mr. Kan's harassment by giving an obviously ineffective remedy by moving plaintiff to a new location where it was more exposed to the harassment. Plaintiff at first refused to move because the obvious ineffectiveness of remedy but later on realized that it is better to move than refuse. This showed the employer's unfair treatment between plaintiff and Mr. Kan on purpose and employer's intent to worsen the harassment. (6) Based on Ms. Hart's notes and supervisor's emails (Aff. (Ex.1)) every action and every statement employer made was against plaintiff but favor Mr. Kan and trying to protect employer from liability. Examining the details of Ms. Hart's notes and supervisor's emails plaintiff revealed that the notes and emails were filled with opinions rather than facts, classic "he said she said" context, only undone promises and commitments such as "I will, I wonder, I want to, I thought etc., opinions made with encouragement for elevating harassment rather than trying to stop the harassment such as "some people are more relaxed in our environment and swearing is commonplace (Id. at p.45)". Employer ignored to investigate the racial and national comments by co-workers (Id. at p47 paragraph 5; p. 65 paragraph 6) (7) Employer willfully terminated plaintiff's employment based on fabricated accusation causing the inconsistency in making up the threatening statement, incompetence in the investigation, reckless termination. Employer determined to terminate plaintiff's employment without considering giving a warning or a transfer to another department. Under normal circumstances and assuming that employer did not participate in the harassment it would consider a transfer or giving a warning instead of termination. (8) Employer claimed that between July 31, 2002 and May 28, 2003 plaintiff did not complain the harassment with supervisor, this was not true. Since employer took the control in handling the harassment complaint, employer either hid the record or intended to omit reporting the complaint on purpose so as to claim that the harassment was not severe and pervasive.

All defendant supporting affidavits were made in a bad faith. The following evidences and arguments determine the affidavits are so weak to be credible. i) The affiants were not competent in telling the truth. Facts stated in affidavits made after the discovery and more than three years since the incident were so consistent and unanimous while at the time employer determined to terminate plaintiff employment three years ago employer had no facts and despite that Mr. Kan confirmation twice with Ms. Hart then and now in his affidavit he did not recall any threatening. If evidences were determinative and consistent as in affidavits employer would do a much better job in conducting and reporting the investigation since employer certainly knows that in today's litigious society it is important for employer to prevent a bad situation from becoming an expensive lawsuit. ii) Record showed that employer failed to furnish sufficient and credible evidence required by Mass. Division of Employment and Training under General Law Chapter 151A, Section 25(e) (Aff. (Ex.3). Employer was forced to pay partial unemployment benefit determined by law to plaintiff. If evidences were determinative and consistent as in affidavits employer would have no problem in meeting the requirement under chapter 151A. iii) Defendant used the delay technique as a strategy in its defense; defendant had tried to settle the case through the mediations regardless costly expense and exhausted process. If evidences were determinative and consistent as in affidavit why would employer choose to handle the case in such a senseless to the business decision-making? iiii) Affidavit is considered a weak type of evidence.

The fact EEOC and MCAD dismissed the case are immaterial to the case. EEOC and MCAD dismissed the complaint based on their own jurisdiction and circumstances.

DEFENDANT'S REBUTTAL TO *PRIMA FACIE* CASE:

For the summary judgment to be granted defendant must be able to show sufficient evidences to defeat all the facts and arguments in the prima facie case. All defendant's allegations supporting the summary judgment are so weak in term of relative credibility, professionalism as to be admitted as evidences at summary judgment stage which, pursuant to rule 56, the Court must view the facts in the light most favorable to the non-movant.

III.   CONCLUSION

  Based on the groundless, conflicting and incompetent facts defendant was relying on to defend itself from liability, the fact finder must determine whether the employer acted in good faith. In other words, it is only in the trial for the jury to determine whether, in making determination, the employer conducted a proper investigation and reached reasonable conclusions based upon that investigation. The fact finder must determine in the trial whether employer participated in the harassment. The fact finder must subsequently determine if discrimination was motivating factor inferred from forgoing determinations.

  For the reasons set forth above, this Court should not enter an order granting defendant's Motion for Summary Judgment.

Plaintiff, *Pro se*

[signature]

Loi Tan Nguyen

Dated: September 04, 2006